UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 06-22722-CIV COOKE/BROWN

ARGUSEA LDC,,

 *Plaintiff*,

v.

UNITED STATES OF AMERICA,

 *Defendant*.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant's Motion For Summary Judgment Or In The Alternative Motion to Dismiss [DE 24, 30]. At the outset, I note, as Plaintiff's aptly did, that Defendant's Motion should be construed not as a single motion, but instead, one motion for summary judgment as to Plaintiff's Count I, and one motion to dismiss as to Plaintiff's Count II. Construed and considered in this manner, for the reasons set forth below, Defendant's Motion for Summary Judgment as to Count I is GRANTED, and further, Defendant's Motion to Dismiss Count II is GRANTED.

**I. BACKGROUND**

The facts here are rather straightforward, and for the most part not in dispute. At approximately 11:30 a.m., on November 10, 2004, the M/Y ARGUSEA, a 118-foot private yacht, struck the submerged remnant of Biscayne Bay Green Daybeacon 41 ("DBN 41"). DBN 41, maintained by the Seventh Coast Guard District, is a single pile with a square green board and triangle yellow marker affixed indicating the side of the channel it marks and that it is located in the Intracoastal waterway. At approximately 11:00 a.m., on November 11, 2004, Mr.

Brian Mitchell, Captain of the ARGUSEA at that time, notified the Coast Guard that his vessel struck a pile and sustained damaged on November 10, 2004. None of these facts are in dispute.

On November 6, 2006, Plaintiff filed its initial Complaint, which it subsequently amended, with Defendant's written consent, on May 7, 2007. Plaintiff brought two counts, claiming that Defendant, United States of America (through the United States Coast Guard) was negligent in installing and maintaining DBN 41, and that this negligence resulted in approximately two-million dollars ($2,000,000) of damage to the ARGUSEA. On June 25, 2007, Defendant filed the instant motions, to which the appropriate response, reply, and sur-reply were filed. The only factual disputes raised by Plaintiff, in its memoranda and concise statement of disputed material facts, are the last date of inspection of DBN 41 prior to the allision, and whether the Defendant had notice that DBN 41 was discrepant prior to the allision.

## II.   RELEVANT STANDARDS

(a)   Summary Judgment

Summary judgment is proper when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue as to any material fact and compels judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Only the existence of a genuine issue of material fact, as opposed to a simple factual dispute, will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). No genuine issue of material fact exists when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

(b) Motion to Dismiss

"Attacks on subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) come in two forms: 'facial attacks' and 'factual attacks.'" *Garcia v. Copenhaver, Bell & Associates, M.D.'s, P.A.,* 104 F.3d 1256, 1260-61 (11th Cir. 1997) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1528-29 (11th Cir.1990)). Here, Defendant has levied a factual attack, "challeng[ing] 'the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and [so,] matters outside the pleadings, such as testimony and affidavits, are considered.' " *Garcia*, 104 F.3d at 1261 (citation omitted). Upon a factual attack

> the trial court may proceed as it never could under 12(b)(6) or Fed.R.Civ.P. 56. Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Lawrence v. Dunbar*, 919 F.2d at 1529 (citing *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir.), *cert. denied*, 454 U.S. 897 (1981)).[1] However, where an attack on subject matter jurisdiction also implicates an element of the cause of action,

> the proper course of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case. . . . Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits.

---

[1]The United States Court of Appeals for the Eleventh Circuit, in *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), adopted as binding precedent all of the decisions of the former United States Court of Appeals for the Fifth Circuit handed down prior to the close of business on September 30, 1981.

*Williamson*, 645 F.2d at 415.

As noted above, the attack here is factual, but it does not, however, implicate an element of the cause of action because the challenge is based on the discretionary function exception of the Federal Tort Claims Act, and whether the actions of the Defendant, regardless of how they were carried out, fit within that exception, and therefore preclude jurisdiction.

### III.   DISCUSSION

(a)   Summary Judgment

Defendant, in its motion for summary judgment as to Count I, argues that it met its duty of care, and further, that it owed no duty to warn of unknown dangers. Plaintiff's first claim, negligence in maintaining the daybeacon, alleges that Defendant has failed to meet its duty of care in properly maintaining DBN 41. However, Plaintiff does not allege *how* Defendant was negligent in meeting its duty of care, but rather, argues that the current standard of care is insufficient and the concomitant duty of the Coast Guard should be made more stringent.[2]

Plaintiff further argues that there are genuine issues of material fact with regard to the inspection of, and notice of damage to, DBN 41. Plaintiff relies on a subsequently corrected interrogatory response, and two Coast Guard reports, that while facially creating an issue of

---

[2] Plaintiff's Complaint alleges that Defendant was negligent (1) in failing to "establish and maintain [DBN 41] in such a manner so that it would be readily visible on and above the surface of the water to vessels navigating in its vicinity[,]" and (2) in designing and installing DBN 41. However, in Plaintiff's memorandum opposing summary judgment, Argusea LDC appears to argue simply, that but-for the Coast Guard's installing the *navigational aid* DBN 41, the accident would not have occurred. Plaintiff even goes so far, in arguing against dismissal of Count II, to imply that the Defendant erected the *navigational aid* to promote disaster and "designed [DBN 41] in such a manner as to repeatedly put mariners in danger." Despite the fact that discovery is complete, *see* DE 52, Plaintiff has offered no support for these specious allegations.

material fact, were reconciled though an unrebutted affidavit.

First, Plaintiff's argument that the standard should be changed is not within the province of this Court. The standard of care, discussed specifically *infra*, has been clearly delineated by the Supreme Court. Although it is "hornbook law" that a federal district court is bound to follow applicable precedent of the Supreme Court, Plaintiff has devoted much of its argument opposing summary judgment to the assertion that the current standard is too lax. Plaintiff asks this Court to ignore binding precedent, which has been in place for over fifty-years, and instead hold Defendant liable without fault, or at least without proof of fault; that is, hold the Coast Guard strictly liable. Specifically, Plaintiff argues that "the due care standard set forth in cases like *Indian Tower* [sic] *Co. v. United States* [] upon which Defendant relies, instills no real incentive for the government to adequately maintain the navigational aides it chooses to erect." *Plaintiff's Memorandum of Law in Opposition*, [DE 37]. Even if this were true, this Court sees no reason, and has no authority, to disregard established, controlling precedent. The Court of Appeals for the Eleventh Circuit has spoken conclusively on this subject:

> Federal district courts and circuit courts are bound to adhere to the controlling decisions of the Supreme Court. *Hutto v. Davis*, 454 U.S. 370, 375, 102 S.Ct. 703, 705-706, 70 L.Ed.2d 556 (1982); *Stell v. Savannah-Chatham County Board of Education*, 333 F.2d 55, 61 (5th Cir.), *cert. denied*, 379 U.S. 933, 85 S.Ct. 332, 13 L.Ed.2d 344 (1964); *Booster Lodge No. 405, Int. Ass'n of M. & A.W. v. NLRB*, 459 F.2d 1143, 1150 n. 7 (D.C.Cir.1972). Justice Rehnquist emphasized the importance of precedent when he observed that "unless we wish anarchy to prevail within the federal judicial system, a precedent of this Court must be followed by the lower federal courts no matter how misguided the judges of those courts may think it to be." *Davis*, 454 U.S. at 375, 102 S.Ct. at 706. See Also, *Thurston Motor Lines, Inc. v. Jordan K. Rand, Ltd.*, 460 U.S. 533, 103 S.Ct. 1343, 75 L.Ed.2d 260 (1983) (the Supreme Court, in a *per curiam* decision, recently stated: "Needless to say, only this Court may overrule one of its precedents."). The old Fifth Circuit articulated these positions

> when it stated that "no inferior federal court may refrain from acting as required by [a Supreme Court's] decision even if such a court should conclude that the Supreme Court erred as to its facts or to the law." *Stell*, 333 F.2d at 61. Judicial precedence serves as the foundation of our federal judicial system. Adherence to it results in stability and predictability. If the Supreme Court errs, no other court may correct it.

*Jaffree v. Wallace*, 705 F.2d 1526, 1532-33 (11th Cir. 1983).

Second, the Coast Guard properly exercised its duty of care. The Coast Guard was required to exercise *due care* in operating and maintaining its navigation aids. *See Indian Towing Co. v. United States*, 350 U.S. 61, 69 (1955).

> "The Coast Guard need not undertake lighthouse service. But once it exercised its discretion to operate a light . . . and engendered reliance [on that light], it was obligated to use *due care* to make certain that the light was kept in good working order; and if the light did become extinguished, then the Coast Guard was further obligated to use *due care* to discover this fact and to repair the light or give warning[.]"

*Id.* (emphasis added). Due care, often synonymous with ordinary care or reasonable care, has been defined as "the degree of care that a prudent and competent person engaged in the same line of business or endeavor would exercise under similar circumstances." BLACK'S LAW DICTIONARY, 225 (8th ed. 2004).

Neither in its Complaint, nor its memoranda in opposition to summary judgment, has Plaintiff presented factual allegations supporting the argument that the Coast Guard failed to use due care in maintaining DBN 41. The evidence, taken in the light most favorable to Plaintiff, shows, in fact, that Defendant performed its duties with due care. The reports provided by the U.S. Coast Guard Integrated Aids to Navigation Information System (USCG ATONIS) show that regular inspection and maintenance were performed on DBN 41 in accordance with the Coast Guard Aid to Navigation manual and applicable regulations in effect at the time of the allision.

*See* DE 38.  Moreover, upon the finding or reporting of discrepancy with DBN 41, the Defendant acted prudently and expediently in repairing or replacing the daybeacon, including using temporary lighted beacons while DBN 41 was being worked on.  *Id.*  Although the Court understands Plaintiff's argument that a two-year interval between scheduled inspections is not reasonable, such an interval is not outside the bounds of due care here, especially where the Defendant is responsible for the inspection and maintenance of hundreds, if not thousands, of navigational aids.

Plaintiff's also argues that a subsequently corrected answer to an interrogatory, and the USCG ATONIS documents, relied upon above, create two issues of material fact, thereby precluding entry of summary judgment.  Plaintiff's argument is flawed on both issues.

The interrogatory in question is interrogatory 12, as follows:

> **INTERROGATORY 12**
> *When was Green Daybeacon 41 last physically inspected by the U.S. Coast Guard prior to the November 10, 2004 accident of the Argusea?  Please provide a copy of all records which support this answer.*

The original answer to this interrogatory was:

> **RESPONSE 12**
> *Defendant objects to this Interrogatory on the grounds that it is vague.  Subject to this objection, the United States responds that Green Daybeacon 41 was visited and inspected when it was placed in its assigned position on October 29, 2002, by the Coast Guard Cutter Hudson.  See United States 00041-00043.*

However, that answer was corrected at a later date and replaced with the following response:

> **RESPONSE 12**
> *Defendant objects to this Interrogatory on the grounds that it is vague.  Subject to this objection, the United States responds that Green Daybeacon 41was last physically inspected, and the Light List Number verified, by the United States Coast Guard on October 22, 2004.  At that time, the aid was found to be watching*

*properly. Day Beacon 00043, 00036.*

Plaintiff argues that Defendant's should be bound by their initial response (under FRCP 33(b)(1)), and that, even if not bound to their initial response, the change in response raises a genuine issue of material fact. Although this Court can conceive of a situation where a change in response to an interrogatory could create an issue of material fact, no such issue is created here.

Under FRCP 26(e)(1)(A) "[a] party who has . . . *who has responded to an interrogatory . . . must supplement or correct its . . . response . . . in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect*, and if the additional or corrective information has not otherwise been made known. . . ." Without question, Defendant's correction was proper. Although the date of last inspection is important to this case, the USCG ATONIS documents support Defendant's correction, and Plaintiff has offered no evidence to impugn the Defendant's accuracy or honesty. Further, the apparent error on two of those USCG ATONIS documents does not amount to a genuine issue of material fact.

Plaintiff argues that two of the USCG ATONIS reports reflect that on October 24, 2004, two days after the notation of the routine inspection, but two-and-one-half weeks prior to the allision, DBN 41 was found destroyed. The exact notations[3] are as follows:

```
11/24/2004    ANTMIAMI
24OCT04: FOUND AID DESTROYED, SET TRLB 3 YDS CHANNEL WARD OF WRECK. VERIFIED LLNR,
CHART, ATONIS AND AID ASSIGNMENT LIST.L/W/P
```

---

[3] The notations were copied directly from the Adobe .pdf images provided by Plaintiff.

> 24 NOV 2004      UNKNOWN UNIT
> 24OCT04: FOUND AID DESTROYED, SET TRLB 3 YDS CHANNEL WARD OF WRECK. VERIFIED LLNR, CHART, ATONIS AND AID ASSIGNMENT LIST .L/W/P

At first blush, these notations do raise a question as to whether Defendant had notice of damage to, or a discrepancy with, DBN 41, after the claimed October 22, 2004, inspection, but prior to the ARGUSEA's striking. I am compelled to find, however, that no genuine issue of material facts exists.

First, and most importantly, Defendant submitted the declaration of Hilary E. Lawrence, Chief Boatswain's Mate, United States Coast Guard, to address the alleged date discrepancies. Ms. Lawrence, according to her declaration, was the Officer in Charge of the Aids to Navigation Team between June 2004 and June 2005. In her declaration, she stated that the "24OCT04" under the November 24, 2004, entry, was included in error, and that the entry was meant to reflect Defendant's response on November 11, 2004, to the M/Y Argusea's allision with DBN 41. Moreover, Ms. Lawrence reiterated that

> "the Coast Guard received no reports and there are no records of discrepancies for DBN 41 from the time of the biennial servicing conducted on October 22, 2004 until Mr. Mitchell's report on November 11, 2004. . . . [H]ad there been any other reports of discrepancies communicated to the Ft. Lauderdale ANT, those reports would have been included in the file for DBN 41 . . . ."

Plaintiff has not directly attacked the veracity of Ms. Lawrence or her declaration, but has instead argued that the declaration cannot be used to "avoid the existence of disputed material facts by . . . contradicting the content of [Defendant's] own documents [the USCG ATONIS reports]." Put more simply, Plaintiff has not offered any evidence to rebut the declaration, and as

such, the declaration stands as undisputed fact.[4]

Furthermore, there is no *contradiction* between the USCG ATONIS reports and Ms. Lawrence's declaration. As noted by Plaintiff, there appeared, on the face of the reports, to be an issue regarding the "24OCT04" notation and any prior notice of discrepancy with DBN 41. But, that issue was *clarified*, not contradicted, by Ms. Lawrence's declaration stating first, that the entry of "24OCT04" was in error, and second, that the Coast Guard received no reports of discrepancy with DBN 41 between the October 22, 2004, inspection and the November 11, 2004, report of ARGUSEA's allision.

For the reasons set forth above[5], Defendant's Motion for Summary Judgment as to Count I is granted.

(b)     Motion to Dismiss

Defendant has moved to dismiss Count II of Plaintiff's Complaint on the grounds that this Court lacks subject matter jurisdiction. The basis for the motion is the discretionary function exception to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §2680(a). Plaintiff brought suit under the Suits in Admiralty Act ("SAA"), 46 U.S.C. §30902 *et seq.*, which waives sovereign

---

[4]*See Fed. R. Civ. P. 56(e)(2) (*"When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must — by affidavits or as otherwise provided in this rule — set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party.").

[5]Although not raised by either party, Plaintiff's argument that the "24OCT04" notation indicates that the Defendant had notice that DBN 41 was discrepant prior to the November 10, 2004, allision, fails to take notice of the actions attested to in that notation. Specifically, the notation indicates that DBN 41 was temporarily replaced by a lighted buoy, and was left watching properly. Therefore, even if DBN 41 was found discrepant after the October 22, 2004, inspection, the "24OCT04" notation would still indicate that proper warnings were in place prior to the accident which sparked this litigation.

immunity and allows suit against the United States. However, the discretionary function exception countermands this waiver of immunity. "[E]very circuit to consider the issue has concluded that the SAA's waiver of immunity is subject to the 'discretionary function' exception identified in the FTCA, 28 U.S.C. § 2680(a). Where applicable, such an exception to this statutory waiver of immunity abrogates federal subject matter jurisdiction over any pursuant claim." *Mid-South Holding Co., Inc. v. U.S.,* 225 F.3d 1201, 1203-04 (11th Cir. 2000) (citations omitted).

Specifically, the discretionary function exception, 28 U.S.C. §2680(a), insulates the government from liability with regard to

> [a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

In *United States v. Gaubert*, the Supreme Court set forth a two-prong test to determine whether the discretionary function exception applies. 499 U.S. 315, 322-23 (1991). First, it must be determined whether the act or acts in question involved an element of judgment or choice. *Id.* at 322. "The requirement of judgment or choice is not satisfied if a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." *Id.* (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988)) (internal quotation marks omitted); *see also OSI, Inc. v. United States,* 285 F.3d 947, 950 (11th Cir. 2002). The second question to ask is "whether that judgment is of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at

322-23 (citation omitted).

As Defendant has brought a factual challenge to subject matter jurisdiction, the burden rests with Plaintiff to prove that jurisdiction does exist. *OSI*, 285 F.3d at 951 (citing *Thomson v. Gaskill*, 315 U.S. 442, 446 (1942) ("Accordingly, if a plaintiff's allegations of jurisdictional facts are challenged by the defendant, the plaintiff bears the burden of supporting the allegations by competent proof.")). Plaintiff, in opposing this motion, argues that the exception is inapplicable here because the first prong cannot be met. Specifically, Plaintiff argues that the statute authorizing the Coast Guard to establish, maintain, and operate aids to navigation requires that the Coast Guard do so in a manner so as to *prevent* disasters. According to Plaintiff, the Coast Guard has no discretion in following this statute, and, in establishing, maintaining, and operating DBN 41, the Coast Guard actually *promoted* disaster.

This argument is baseless and illogical. First, Plaintiff has presented no evidence that the Coast Guard, in establishing, maintaining, or operating DBN 41, or any other aid to navigation, has intended to do anything other than prevent disasters or collisions. Second, even if there was a question as to whether Defendant was operating properly under the statute, the statute itself does not "prescribe[] a course of action embodying a *fixed or readily ascertainable standard*[,]" and without such a standard, discretion exists. *OSI*, 285 F.3d at 950 (emphasis in original). *See also Hughes v. United States,* 110 F.3d 765, 768 (11th Cir. 1997) ("[The] relevant inquiry is whether the controlling statute or regulation mandates that a government agent perform his or her function in a specific manner." ) (citation omitted). As the statute neither specifies a course of action that the Coast Guard must take, nor mandates how the Coast Guard must establish,

maintain, and operate aids to navigation, discretion exists.[6]

Further, it is clear that the establishment, maintenance, and operation of aids to navigation are precisely the types of conduct and judgments that the discretionary function exception is designed to shield. *Gaubert*, 499 U.S. at 323 ("Because the purpose of the exception is to prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on considerations of public policy.") (internal citations and quotation marks omitted). Defendant has cited several persuasive cases which convince this Court that the Coast Guard's actions related to DBN 41 are protected by the discretionary function exception. *See, e.g., Limar Shipping Ltd. v. United States*, 324 F.3d 1, 10 (1st Cir. 2003) (finding that the decision of the National Oceanic and Atmospheric Administration to use Army Corps' date to create a chart was protected because "[t]he allocation of resources for the production and dissemination of ocean charts by a budget-constrained entity like NOAA is a policy decision that falls within the ambit of the discretionary function exception. Allocation of resources and budget management involve prioritizing and are quintessentially policy-based choices"); *Cranford v. United States*, 466 F.3d 955, 960 (11th Cir. 2006) (finding that decisions regarding the marking and removal of a wreck "involve social, political, and economic policy considerations, such as taking into account the knowledge and customs of international mariners, balancing the needs of pleasure and commercial watercraft, and evaluating agency resource constraints, which include but are not

---

[6]Additionally, as Defendant outlined, two United States Coast Guard manuals confirm that aids to navigation are designed and operated with the consideration of numerous factors, including costs, design life, capabilities, size, maintainability, and environmental conditions and impacts, among others. *See Defendant's Memorandum in Reply to Plaintiff's Opposition to Summary Judgment*, DE 43, and exhibits "D" and "E" attached thereto.

limited to financial concerns"). Recently, the District Court for the Middle District of Florida, agreed with a defendant that

> [i]t goes without saying that policy considerations are present whenever the Coast Guard decided to allocate its finite resources given the myriad of regulatory obligations Congress has granted to it. . . . Therefore as shown above no mandatory statute, regulation or policy exists and the Coast Guard's determination as to how to inspect and regulate bridges along with the marking of obstructions to navigation, either directly or indirectly, necessarily implicate policy determinations. Thus, making this case subject the discretionary function exception and outside of the Court's subject matter jurisdiction.

*Brunet v. United States*, 2008 WL 205331, *5-*6 (M.D.Fla. Jan. 23, 2008) (slip op.).

Plaintiff, despite bearing the burden on this issue, has responded only by contending that none of the cases cited by Defendant involve the placing of "a potentially dangerous object into the water." *See Plaintiff's Memorandum of Law in Opposition*, DE 37, at 10. While Plaintiff is correct in that none of those cases involve a situation identical to the present case, all of the cases do involve discretionary decisions of the Coast Guard regarding the marking of potential hazards, or removal of those hazards.

I find that because the Coast Guard's establishment, maintenance, and operation of DBN 41 was both discretionary and properly grounded in public policy considerations, it falls within the discretionary function exception. Therefore, this Court does not have subject matter jurisdiction over Count II of Plaintiff's Complaint, and Defendant's Motion to Dismiss Count II is granted.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that Defendant's Motion for Summary Judgment Or In The Alternative Motion To Dismiss [DE 24] is **GRANTED** as follows:

(1) Summary Judgment is **GRANTED** in favor of Defendant, The United States of America, and against Plaintiff, Argusea LDC, as to Count I, Negligence in Maintaining Waterway Marker;

(2) Count II, Negligence in the Acceptance and Installation of Waterway Marker is **DISMISSED** for lack of subject matter jurisdiction.

(3) All pending motions are **DENIED** *as moot.*

(4) The Clerk shall **CLOSE** this case.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 13th day of March 2008.

_____
MARCIA G. COOKE
United States District Judge

Copies furnished to:
*The Hon. Stephen T. Brown*
*Counsel of Record*